# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| NEALON LIVERPOOL, )<br>    Plaintiff )<br>v. )<br>)<br>TERRY O'BRIEN, "JOHN DOES )<br>Nos. 1-10" and THE UNITED )<br>STATES OF AMERICA, )<br>    Defendants )<br>)<br>) | Civil Action No. 2:08CV00067<br><br>**REPORT AND<br>RECOMMENDATION**<br><br>**BY: PAMELA MEADE SARGENT<br>United States Magistrate Judge** |

Plaintiff, Nealon Liverpool, ("Liverpool"), an inmate formerly incarcerated at United States Penitentiary Lee County in Jonesville, Virginia, ("USP Lee"),[1] filed this action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971),[2] and the Federal Tort Claims Act, ("FTCA"), 28 U.S.C. § 2761 *et seq.*, against numerous Commonwealth of Virginia Department of Corrections employees and the United States of America. This case is before the court on the defendants' motion to dismiss or, in the alternative, for summary judgment, ("Defendants' Motion"), (Docket Item No. 16), and the plaintiff's motion to amend the complaint, ("Motion to Amend"), (Docket Item No. 51). This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. These motions were

---

[1] Liverpool is currently incarcerated at United States Penitentiary Pollock, located in Pollock, Louisiana.

[2] *Bivens* allows an individual to bring an action for damages against federal officers, acting under color of federal law for a violation of Fourth Amendment rights. It is the federal counterpart to a 42 U.S.C. § 1983 claim.

-1-

referred to the undersigned for recommended decision pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

*I. Facts*

The plaintiff, Nealon Liverpool, a prisoner who previously was incarcerated at USP Lee, brings this action against the defendants, Warden of USP Lee Terry O'Brien, and "John Does Nos. 1-10," as well as the United States of America. In his Complaint, Liverpool seeks damages under *Bivens*, alleging that O'Brien and John Does Nos. 1-10 failed to protect him from an assault by another inmate, in violation of his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution. He also seeks damages under the FTCA against the United States for the negligent and/or wrongful acts or omissions of government employees O'Brien and John Does Nos. 1-10. In his Amended Complaint, Liverpool seeks to add Correctional Officers J. Massey and B. Pendergraft as party defendants to the FTCA claim, in both their individual and official capacities, and he drops the *Bivens* claims.

Liverpool has included some additional factual details regarding the incident at issue in his proposed Amended Complaint than were contained in his original Complaint. He also has filed an affidavit with his response to the Defendants' Motion, filed the same day as the Motion to Amend. Thus, the court will consider the facts as alleged by Liverpool in the Amended Complaint and affidavit in deciding

whether to grant leave to file the Motion to Amend and whether to grant the Defendants' Motion. Through his Amended Complaint and affidavit, Liverpool, an inmate housed in the K-Unit while incarcerated at USP Lee, alleges that on August 25, 2006,[3] at approximately 6:00 p.m., his housing unit was engaged in an incoming move from the recreation yard. (Exhibit 1 to Docket Item No. 52, ("Liverpool Affidavit"), 1.) Inmate Binion, housed in the I-Unit, was standing in the recreation yard by the I-Unit at the time of Liverpool's incoming move. (Liverpool Affidavit at 1.) Earlier that same day, another inmate had informed Liverpool that he overheard Binion telling another inmate that Liverpool was "strange acting,"[4] or something to similar effect. (Liverpool Affidavit at 1.) When Liverpool saw Binion standing in the recreation yard, he was somewhat reluctant to approach him, but because he saw two officers standing close by, he felt reassured that everything would be alright. (Liverpool Affidavit at 1, 2.) Therefore, Liverpool decided to speak with Binion regarding his alleged comment in an effort to clear up any misunderstanding that might have transpired between them. (Liverpool Affidavit at 1.) Liverpool stated that he approached Binion in a "calm and collective manner" before asking him about the comment. (Liverpool Affidavit at 1.) Binion informed Liverpool that he did not mean anything by the comment and that everything was alright between them. (Liverpool Affidavit at 1.) Liverpool began to walk away, but after taking approximately seven or eight steps, he felt something slash across his face from behind him. (Liverpool Affidavit at 1.) When he then turned to see what was happening, he was slashed across

---

[3] In his Amended Complaint, Liverpool alleges that the assault occurred on August 25, 2006, while in his affidavit, he alleges that it occurred on August 26, 2006.

[4] The defendants have produced a statement from this inmate stating that he actually informed Liverpool that Binion had called him a "snitch." However, Liverpool denies ever having been told this.

the face again with a sharp object. (Liverpool Affidavit at 1.) Liverpool grabbed Binion's hand in an attempt to stop the attack, and the two inmates tussled for a few seconds before Binion broke free and ran away. (Liverpool Affidavit at 1.) Binion then threw the weapon he had used to assault Liverpool into the storm drain. (Amended Complaint at 4.) Liverpool immediately covered his face with his t-shirt in an attempt to stop the bleeding from his face. (Liverpool Affidavit at 1.) He stated that he did not know how badly he was hurt, but he hoped that someone would come help him. (Liverpool Affidavit at 1.) However, Liverpool does not recall any officers physically intervening in the attack. (Liverpool Affidavit at 2.) Specifically, he did not hear anyone tell Binion to drop the weapon. (Liverpool Affidavit at 2.) He concedes that an officer might have notified the control room via radio of the incident, but no officers ever came physically close to the situation in an effort to intervene in the attack. (Liverpool Affidavit at 2.)

Following the assault, Liverpool was taken to the prison infirmary where a female medical staff member unsuccessfully attempted to stop the bleeding from his face. (Liverpool Affidavit at 2.) She bandaged the wounds until the on-call physician could arrive. (Amended Complaint at 4; Liverpool Affidavit at 2.) When the prison physician arrived approximately two to three hours later, he attempted to close Liverpool's wounds, but was unable to close the wound on the left side of Liverpool's face. (Amended Complaint at 5; Liverpool Affidavit at 2.) When the female medical staff member suggested that Liverpool needed to be taken to an outside hospital, the physician stated that would cost the institution too much money. (Liverpool Affidavit at 2-3.) Although he continued to try to close the wound on the left side of Liverpool's face, it continued to bleed badly. (Liverpool Affidavit at 3.) Eventually, the physician

was able to close the wound to the left side of Liverpool's face, but it burst open due to the formation of an expansile hematoma. (Amended Complaint at 5-6; Liverpool Affidavit at 3.) At that time, Liverpool was transported to Wellmont Holston Valley Medical Center, where he underwent emergency surgery. (Amended Complaint at 6; Liverpool Affidavit at 3.) As a result of the assault, Liverpool sustained severe facial injuries, and he continues to suffer with pain, but at a manageable level. (Amended Complaint 6.) Liverpool has possible nerve damage and permanent scars as a result of the attack, he suffered mental anguish and has experienced psychological problems, including depression and anxiety. (Amended Complaint at 6.)

Liverpool states that because his K-Unit was engaged in an incoming move, Binion was not supposed to have been out of his I-Unit. (Liverpool Affidavit at 1.) Liverpool further states that the I-Unit officer was standing approximately 10 feet from Binion, and when Binion attempted to leave the I-Unit, this officer should have suspected that something was wrong. (Liverpool Affidavit at 1-2.) Liverpool alleges that the only way Binion could have gotten out of the I-Unit was for an officer to have let him out. (Liverpool Affidavit at 2.) He further states that the doors usually are locked until inmates returning from various activities are securely placed back in their unit. (Liverpool Affidavit at 2.) It is only at that time that an outgoing move of another unit can occur. (Liverpool Affidavit at 2.) Liverpool states that the reason for such protocol is to avoid having too many inmates in one area at any given time in order to prevent assaults and other violent acts from occurring. (Liverpool Affidavit at 2.)

Liverpool also states that the investigating officer, Lieutenant Pitt, came to

speak with him while he was waiting for the prison physician to arrive and examine him. (Liverpool Affidavit at 3.) Because Liverpool was in too much pain to speak with him at that time, Lieutenant Pitt began speaking to the other officers present in the room. (Liverpool Affidavit at 3.) Liverpool states that he overheard Lieutenant Pitt ask one of the officers whether the weapon used in the assault was recovered, and someone responded "yes" and "the[y're] on the way with it now." (Liverpool Affidavit at 3.) Shortly thereafter, two other officers entered the room and gave Lieutenant Pitt something, to which Lieutenant Pitt responded by saying "Jesus this is the same kind of weapon [B]inion was caught with a few months earlier." (Liverpool Affidavit at 3.) Liverpool also stated that he overheard Lieutenant Pitt describe the weapon as a "box cutter type razor blade," and stated that "they must be getting them from the hobby craft shop or the C.M.S. work shop." (Liverpool Affidavit at 3.) Liverpool contends that this weapon was a manufactured instrument and, thus, must have been brought into the institution by staff members as a tool. (Liverpool Affidavit at 3.) He alleges that the staff allowed this weapon to get into the hands on Binion on more than one occasion by failing to monitor the tools in a responsible manner. (Liverpool Affidavit at 3.)

## II. Analysis

As stated above, this matter is before the court on the Defendants' Motion and on the plaintiff's Motion to Amend. Because documents outside of the pleadings have been considered by the court in considering the Defendants' Motion, it shall be construed as a motion for summary judgment. *See* FED. R. CIV. P. 12(d). Plaintiff's counsel conceded at the hearing on these matters, held on October 27, 2009, that the

*Bivens* claims have been abandoned, leaving only the FTCA claim before the court for decision. Therefore, I find it unnecessary to address the *Bivens* claims in this Report and Recommendation. Liverpool's counsel also conceded at the hearing, that no FTCA claim may proceed against any individual defendants.[5] Thus, the court finds that the only claim now remaining before it is the FTCA claim against the United States.

Pursuant to Federal Rule of Civil Procedure 56(c), the court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990)(en banc), *cert denied*, 498 U.S. 1109 (1991); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587; *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir.

---

[5] In his proposed Amended Complaint, which advances only the FTCA claim, Liverpool seeks to add two individual defendants.

1995); *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *Ross*, 759 F.2d at 364. In other words, the nonmoving party is entitled "to have the credibility of his evidence as forecast assumed." *Miller*, 913 F.2d at 1087 (quoting *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979)). Therefore, in reviewing the Defendants' Motion, the court must view the facts and inferences in the light most favorable to Liverpool.

Furthermore, Federal Rule of Civil Procedure 15 governs the amendment of pleadings. According to Rule 15(a)(2), in the circumstances currently before the court, a party may amend its pleading only with the opposing party's written consent or the court's leave. Moreover, the court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the United States Supreme Court explained that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test his claim on the merits." The Court further stated that leave to amend shall be freely given unless the party exhibits an "apparent or declared reason -- such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182.

The Fourth Circuit, in applying the Supreme Court's decision in *Foman*, has effectively interpreted Rule 15(a) as "mandat[ing] a liberal reading of the rule's direction for 'free' allowance." *Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987) (quoting *Foman*, 371 U.S. at 182). Despite this liberal

reading, the decision as to whether a motion to amend should be denied lies within the district court's discretion. *See Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W. Va.*, 985 F.2d 164, 167 (4th Cir. 1993). "A court may refuse to allow leave to amend pleadings when the proposed changes would be futile." *New Beckley Mining Corp. v. Int'l Union, U.M.W.A.*, 18 F.3d 1161, 1164 (4th Cir. 1994). Likewise, the district court may deny a motion to amend "where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant." *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987) (citations omitted).

Following the Fourth Circuit's liberal reading of Rule 15(a)'s direction on free allowance, I recommend that the court grant the Motion to Amend and dismiss the plaintiff's *Bivens* claims. However, for the following reasons, I further recommend that the court grant summary judgment in favor of the defendant on Liverpool's sole remaining FTCA claim.

As a sovereign power, the United States may be sued only to the extent that it has expressly consented by statute to suit. *See United States v. Orleans*, 425 U.S. 807, 814 (1976). No legal proceeding may be brought against the United States or its agencies absent such a waiver of its sovereign immunity. The FTCA provides that the United States shall be liable for tort claims, in the same manner and to the same extent as a private individual, under like circumstances. *See* 28 U.S.C.A. § 2674 (West 2006). Thus, the traditional sovereign immunity of the government to tort suits is, to some extent, abrogated by the FTCA, which is the sole and exclusive statutory waiver of sovereign immunity of the United States for tort claims resulting from the negligent or wrongful acts or omissions of federal employees while acting in the scope of their

employment or office. However, there are some exceptions to this waiver of sovereign immunity, including the discretionary function exception. Pursuant to 28 U.S.C. § 2680(a):

> The provisions of this chapter . . . shall not apply to . . . [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C.A. § 2680(a) (West 2006). The discretionary function exception applies, thereby barring a plaintiff's FTCA claim against the United States, when (1) the action complained of involves a element of judgment or choice; and (2) the action relates to considerations of public policy. *See United States v. Gaubert*, 499 U.S. 315, 322-23 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). The first requirement is satisfied if there is no federal statute, agency regulation or policy directive imposing mandatory duties upon the federal actors. The second requirement is satisfied if the discretion is based on social, political or economic policy considerations. It is well-settled that the plaintiff bears the burden of showing that an unequivocal waiver of sovereign immunity exists and to show that the discretionary function exception does not apply. *See Lerose v. United States*, 2008 WL 2704517, at *2 (4th Cir. July 10, 2008) (citing *Welch v. United States*, 409 F.3d 646(4th Cir. 2005)).

In his Amended Complaint, Liverpool argues that the United States is liable

under the FTCA based upon its failure to follow mandatory regulations regarding tool control and inmate moves. First, I find that plaintiff has failed to meet his burden with regard to showing the existence of a mandatory tool control policy. Plaintiff's counsel has had an adequate opportunity to conduct discovery on this issue. Specifically, this issue was raised in the original Complaint, and interrogatories and corresponding requests for production of documents were propounded to the defendants on this issue. Nonetheless, Liverpool has failed to show that a mandatory tool control policy at USP Lee exists. Next, I find that the plaintiff has failed to meet his burden with regard to showing the existence of a mandatory policy concerning inmate moves. In his affidavit, dated August 27, 2009, submitted to the court with his response in opposition to the Defendants' Motion, Liverpool states that because his housing unit was involved in an incoming move, Binion was not supposed to be outside of his housing unit. (Liverpool Affidavit at 1.) However, Liverpool's statement in his affidavit that Binion should not have been out of his housing unit during another housing unit's incoming move does not establish the existence of a mandatory regulation or policy regarding inmate moves. *See Redmond v. United States*, 2006 WL 709347, at *4 (M.D. Pa. Mar. 20, 2006) The facts in *Redmond* are similar to those in the case at bar. Redmond, an inmate, filed suit under the FTCA following an assault by another inmate with a metal fabric cutting bar from the UNICOR workshop. *See Redmond*, 2006 WL 709347, at *2. Just as in this case, the government asserted that the discretionary function exception barred Redmond's FTCA claim. *See Redmond*, 2006 WL 709347, at *3. Redmond reasoned that the prison had a policy that dictated that all metal bars in the prison gym be secured by a wire cable to prevent inmate assaults with metal bars. *See Redmond*, 2006 WL 709347, at *4. He asserted that the metal fabric cutting bar used to attack him should have, likewise, been

secured. *See Redmond*, 2006 WL 709347, at *4. Without citing to any prison policy, Redmond reasoned that because weight bars were secured, the cutting bars also should have been secured, and the federal employees were not allowed to exercise discretion in deciding to leave the cutting bars unsecured. *See Redmond*, 2006 WL 709347, at *4. The court held that, unfortunately for Redmond, his reasoning depended upon what he believed the policy should be and not what was actual prison policy. *See Redmond*, 2006 WL 709347, at *4. The same can be said of Liverpool. In his affidavit, he stated that Binion should not have been out of his housing unit while inmates from another housing unit were being moved inside from the recreation yard. He even states the alleged reasoning behind such a policy. However, because he has failed to show the actual existence of such a policy or regulation, the court has no choice but to find that he is essentially stating what he feels the prison's policy on inmate moves should be, not what the actual policy at the prison is or was.

The only statute to which the plaintiff specifically directs the court's attention is 18 U.S.C. § 4042, which states generally that prison officials have a duty of providing for the protection, care and safekeeping of all federal prisoners. However, it has been widely held that this statute, creating only a general duty of care to safeguard prisoners, does not mean that the BOP cannot exercise judgment in the manner in which it chooses to fulfill that duty. *See Cohen v. United States,* 151 F.3d 1338, 1342 (11th Cir. 1998); *see also Calderon v. United States*, 123 F.3d 947, 950-51 (7th Cir. 1997); *Graham v. United States*, 2002 WL 188573, at *4 (E.D. Pa. Feb. 5, 2002). That being the case, Liverpool's citation to this statute cannot suffice to meet his burden of showing that the discretionary function exception to the FTCA should not apply to bar his claim.

Plaintiff's counsel represented to the court at the October 27, 2009, hearing that she was unaware, until August 2009, when Liverpool swore out his affidavit, of the impropriety of Binion's being allowed to be out of his housing unit while Liverpool's housing unit was involved in an incoming move. Nevertheless, a review of the initial discovery, conducted by plaintiff's counsel in May 2009, reveals that she specifically propounded interrogatories to the defendants seeking information as to why Binion was let out of his housing unit during another housing unit's incoming move. Specifically, Interrogatory No. 21 states: "Why was inmate Binion allowed out of his cell unsupervised?" and Interrogatory No. 22 states: "Before Liverpool was attacked by Binion, why was inmate Binion allowed out of his cell and able to stand in front of the I unit during . . . an incoming move?" (Exhibit A to Docket Item No. 35). Despite these interrogatories, plaintiff's counsel did not make a corresponding request for production of documents relating to the existence of any regulations or policies associated with inmate moves. Also, despite counsel's knowledge, at least by May 2009, that Binion was potentially in a location where he should not have been at the time he assaulted the plaintiff, she did not seek leave to file the Motion to Amend until September 2009, five months after the Defendants' Motion was filed. Moreover, the court notes that despite having such knowledge, and despite counsel's representation to the court at the hearing on these matters that additional discovery is needed on this issue, Liverpool's counsel has not filed a Rule 56(f) affidavit.[6] However, even if counsel had filed such an affidavit, I would not be inclined to allow

---

[6] Federal Rule of Civil Procedure 56(f) states, in relevant part, as follows: "If a party opposing the [summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken. . . ." FED. R. CIV. P. 56(f)(2).

the additional discovery sought by plaintiff's counsel under the current circumstances. In deciding whether to entertain a Rule 56(f) affidavit, the nonmoving party must provide the court with a basis for concluding that discovery will establish genuine issues of material fact relevant to the motion and would preclude the entry of summary judgment. *See Garcia v. U.S. Air Force*, 533 F.3d 1170, 1179 (10th Cir. 2008). The only justification for conducting further discovery on the inmate move issue advanced by plaintiff's counsel is her "belief" and her "feeling" that such a policy exists. However, it is clear to the court that such feelings and beliefs simply do not rise to the level necessary to establish the requisite existence of a genuine issue of material fact so as to preclude summary judgment on this issue.

Next, I find that Liverpool also has failed to show that a genuine issue of material fact exists with regard to the second prong of the test for determining whether the discretionary function exception applies, namely that the action complained of relates to considerations of public policy. The court finds that both tool control policies and inmate move policies are undoubtedly related to day-to-day inmate and prison security. Such day-to-day security issues have been widely recognized as being based on considerations of public policy. For instance, in *Mitchell v. Arizona*, 149 F. Supp. 2d 1111, 1114-15 (D. Ariz. 1999), the district court held that day-to-day security considerations, including rules about who can and cannot enter a housing unit, are precisely the types of policy considerations that are within the discretion of prison employees. Likewise, in *Queen v. United States*, 2008 WL 2783274 (D. Kan. July 17, 2008), the district court held that BOP staff decisions relating to where and how to post security officers during controlled movements is precisely the type of decision that the discretionary function exception was designed to protect because it

required the exercise of judgment based on considerations of public policy. Similarly, in *Calderon*, the Seventh Circuit held that balancing the need for inmate security against the rights of inmates to circulate and socialize within the prison involves considerations based upon public policy. Finally, the district court in *Mitchell*, noted above, held that decisions regarding day-to-day security needs of the prison, including the number of guards in a given area, where to place emergency alarms and tactical choices surrounding inmate movement within the institution are judgment calls based on policy determinations which seek to accommodate safety goals and the reality of finite agency resources. *See* 149 F. Supp. 2d at 1114.

It is for all of the above-stated reasons that I find that Liverpool has failed to meet his burden of showing that a genuine issue of material fact exists regarding the applicability of the discretionary function exception, thereby barring his FTCA claim against the United States. That being the case, I recommend that the court grant summary judgment in the defendant's favor on Liverpool's sole remaining FTCA claim.

**PROPOSED FINDINGS OF FACTS AND
CONCLUSIONS OF LAW**

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The plaintiff, an inmate formerly incarcerated at USP Lee in the I-Unit, was attacked by another inmate at USP Lee housed in the K-Unit, with a box cutter, razor blade-type weapon during an incoming move from the recreation yard, resulting in serious and permanent injuries to the plaintiff;

2. Following the Fourth Circuit's liberal reading of Federal Rule of Civil Procedure Rule 15's direction on free allowance, the plaintiff's Motion to Amend should be granted;

3. Therefore, the plaintiff's *Bivens* claims should be dismissed from the plaintiff's case, leaving only the FTCA claim against the United States;

4. The FTCA allows for suit against the United States for claims for damages resulting from the negligent or wrongful acts or omissions of federal employees taken within the scope of their office or employment;

5. There are some exceptions to the waiver of sovereign immunity of the United States allowed under the FTCA, including the discretionary function exception;

6. The discretionary function exception applies, thereby barring a plaintiff's FTCA claim against the United States, when (a) the action complained of involves an element of judgment or choice; and (b) the action relates to considerations of public policy;

7. The plaintiff bears the burden of showing that the discretionary function exception does not apply;

8. The plaintiff has failed to show the existence of any mandatory regulation or policy that was violated by the defendant;

9. Thus, the plaintiff has failed to show the existence of a genuine issue of material fact as to the first prong of the test governing the applicability of the discretionary function exception;

10. The plaintiff has failed to show that tool control policies and inmate move policies are not based on public policy considerations;

11. Thus, the plaintiff has failed to show the existence of a genuine issue of

material fact as to the second prong of the test governing the applicability of the discretionary function exception;

12. Therefore, the discretionary function exception applies, thereby barring the plaintiff's FTCA claim against the United States; and

13. The defendant is entitled to summary judgment on Liverpool's FTCA claim.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the plaintiff's Motion to Amend, (Docket Item No. 51), dismiss the plaintiff's *Bivens* claims and grant the Defendants' Motion, (Docket Item No. 16), entering summary judgment in favor of the defendant on the plaintiffs FTCA claim.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the

Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

DATED: This 3rd day of November 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE